## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### No. 1:26-cv-433-CCE (JEP)

| | | |
|---|---|---|
| SHAWN CARD, individually and on behalf of all others similarly situated, | : | **DEFENDANT R.J. REYNOLDS** |
| | : | **TOBACCO HOLDINGS, INC.'S** |
| | : | **MEMORANDUM OF LAW IN** |
| Plaintiff, | : | **SUPPORT OF ITS MOTION TO** |
| v. | : | **DISMISS COMPLAINT** |
| | : | **[F.R.C.P. 12(b)(6)]** |
| R.J. REYNOLDS TOBACCO | : | |
| HOLDINGS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 2

LEGAL BACKGROUND AND BASIS FOR MOTION TO DISMISS .......................... 3

PLAINTIFF'S ALLEGATIONS .................................................................................. 6

LEGAL STANDARD ................................................................................................. 7

Argument ................................................................................................................... 7

    I.      THIS COURT SHOULD INTERPRET AND APPLY SECTION 227(c) OF THE TCPA AS WRITTEN WITHOUT DEFERENCE TO FCC INTERPRETATIONS OF THE STATUTE ............................................. 7

    II.     SECTION 227(c) DOES NOT APPLY TO TEXT MESSAGES ......................... 8

          A.     Section 227(c) and its Implementing Regulations do not Reference Text Messages ............................................................ 8

          B.     The Statutory Meaning of "Telephone Call" in 1991—and Today—does not Include Text Messages, as Reflected in the Language of the TCPA and Amendments Thereto ................................. 9

          C.     Common Usage of the Terms "Telephone Call" and "Text Message" Confirms they are Two Distinct Methods of Communication ................................................................................ 12

    III.    SECTION 227(c) DOES NOT APPLY TO CELLPHONES ............................ 13

          A.     Statutory and Regulatory Background ........................................... 13

          B.     "Residential Telephone Subscriber" Plainly Refers to a Subscriber of a Landline Telephone ............................................. 14

    IV.    BECAUSE AMENDMENT WOULD BE FUTILE, THE COURT SHOULD DISMISS WITH PREJUDICE ............................................. 22

CONCLUSION ....................................................................................................... 23

LOCAL RULE 7.3(d) CERTIFICATION OF WORD COUNT .................................. 24

CERTIFICATE OF SERVICE ................................................................................. 25

**Cases**

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) ............................................................................... 15

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ............................................................................................. 7

*Badaracco v. C.I.R.*,
464 U.S. 386 (1984) ............................................................................................... 11

*Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*,
852 F.3d 1078 (D.C. Cir. 2017) ...................................................................... 16, 22

*Barr v. Am. Ass'n of Pol. Consultants, Inc*,
591 U.S. 610 (2020) ............................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 7

*Blow v. Bijora, Inc.*,
191 F.Supp. 3d 780 (N.D. Ill. 2016)...................................................................... 10

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ............................................................................................... 12

*Chennette v. Porch.com*,
50 F.4th 1217 (9th Cir. 2022)........................................................................... 16, 17

*Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*,
467 U.S. 837 (1984) .......................................................................................passim

*Connor v. Wishnia*,
No. 2:24-cv-06310, 2025 U.S. Dist. LEXIS 155922 (D.S.C. Jul. 15, 2025) ......... 20

*Cozzarelli v. Inspire Pharms., Inc.*,
549 F.3d 618 (4th Cir. 2008)................................................................................. 22

*Crespo v. Holder*,
631 F.3d 130 (4th Cir. 2011) .................................................................................. 9

*Davis v. CVS Pharm., Inc.*,
797 F.Supp. 3d 1270 (N.D. Fla. 2025)............................................................. 11, 13

*Drazen v. Pinto*,
74 F.4th 1336 (11th Cir. 2023)............................................................................... 10

*El Sayed v. Naturopathica Holistic Health, Inc.*,
8:25-cv-00846, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025) .......... 13

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) .......................................................................................passim

ii

*Gaker v. Q3M Ins. Sols.*,
    No. 3:22-cv-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919 (W.D.N.C.
    Feb. 8, 2023) ............................................................................................................... 19

*GGM, LLC v. BellSouth Telecommunications, Inc.*,
    664 F.3d 46 (4th Cir. 2011) ...................................................................................... 10

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ...................................................................................... 7

*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006) ................................................................................................. 21

*Hudson v. Palm Beach Tan, Inc.*,
    No. 1:23-cv-00486, 2024 U.S. Dist. LEXIS 165676 (M.D.N.C. Aug. 12,
    2024) ............................................................................................................. 8, 12, 20

*Ignacio v. United States*,
    674 F.3d 252 (4th Cir. 2012) ...................................................................................... 9

*Internicola v. Mortgagepros, LLC*,
    No. 6:25-cv-01613-AGM-LHP, 2026 U.S. Dist. LEXIS 129255 (M.D. Fla.
    June 10, 2026) ............................................................................................................. 3

*Irvin v. Sonic Indus. Servs.*,
    No. 3:25-cv-00242-LMM, 2026 U.S. Dist. LEXIS 90262 (N.D. Ga. Apr.
    20, 2026) ..................................................................................................................... 3

*James v. Smarter Contact, Inc.*,
    No. 8:25-CV-1657-KKM-SPF, 2026 U.S. Dist. LEXIS 68492 (M.D. Fla.
    Mar. 31, 2026) ............................................................................................................ 3

*Jones v. Blackstone Med. Servs., LLC*,
    2025 WL 2042764 (C.D. Ill. July 21, 2025) .......................................................... 2, 5

*Laccinole v. Cova Home Realty LLC*,
    No. 2:21-cv-00507, 2026 U.S. Dist. LEXIS 46327` (E.D. Va. Feb. 11, 2026 ....... 20

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ......................................................................................... passim

*Lopresti v. Nouveau Essentials Mktg. LLC*,
    5:25-cv-00282-CEM-PRL, 2026 U.S. Dist. LEXIS 39599 (M.D. Fla. Feb.
    26, 2026) ..................................................................................................................... 3

*Marbury v. Madison*,
    1 Cranch 137, 2 L.Ed. 60 (1803) ............................................................................... 5

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025) ......................................................................................... passim

Case 1:26-cv-00433-CCE-JEP    Document 8    Filed 07/13/26    Page 4 of 31

*Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*,
    472 U.S. 237 (1985) ................................................................................................11

*Murphy v. DCI Biologicals Orlando, LLC*,
    797 F.3d 1302 (11th Cir. 2015).............................................................................12

*Newman v. SGMS, Inc.*,
    No. 3:25-cv-00042, 2025 U.S. Dist. LEXIS 169748 (W.D.N.C. Sept. 2,
    2025).................................................................................................................19, 20

*Northrup v. Innovative Health Ins. Partners, LLC*,
    No. 8:17-CV-1890-T-36JSS, 2019 U.S. Dist. LEXIS 72823 (M.D. Fla. Jan.
    3, 2019)....................................................................................................................12

*Perrin v. United States*,
    444 U.S. 37 (1979) ...................................................................................................9

*Pulsifer v. United States*,
    601 U.S. 124 (2024) ...............................................................................................10

*Radvansky v. 1-800-Flowers.com, Inc.*,
    No. 1:25-cv-2811-TWT, 2026 U.S. Dist. LEXIS 32415 (N.D. Ga. Feb. 17,
    2026)..........................................................................................................................3

*Radvansky v. Kendo Holdings*,
    No. 3:23-cv-00214-LMM, 2026 U.S. Dist. LEXIS 65154 (N.D. Ga. Feb.
    12, 2026)....................................................................................................................3

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979) ...............................................................................................15

*Richards v. Fashion Nova, LLC*,
    No. 1:25-cv-01145-TWP-MKK, 2026 U.S. Dist. LEXIS 65696 (S.D. Ind.
    Mar. 26, 2026) ..........................................................................................................3

*Richards v. Shein Distrib. Corp.*,
    No. 1:25-cv-01385-TWP-TAB, 2026 U.S. Dist. LEXIS 65697 (S.D. Ind.
    Mar. 26, 2026) ..........................................................................................................3

*Russello v. United States*,
    464 U.S. 16 (1983) .................................................................................................21

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019)........................................................................10, 17

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009)..................................................................................12

*Seth Steidinger, et al. v. Blackstone Medical Services*,
    case no. 25-2398 (argued May 21, 2026)..................................................................5

iv

*Shelton v. Advance Funding, LLC*,
378 F.Supp. 3d 356 (E.D. Pa. May 8, 2019) ........................................................ 17

Slate v. Healthy Spirit, LLC,
No. MJM-23-3034, 2025 U.S. Dist. LEXIS 14427 (D. Md. Jan. 28, 2025) .......... 20

*Soliman v. Gonzales*,
419 F.3d 276 (4th Cir. 2005) ................................................................................ 10

*Stockdale v. Skymount Prop. Grp., LLC*,
2026 U.S. Dist. LEXIS 42954 (N.D. Ohio Mar. 3, 2026) ..................................... 12

*Trim v. Reward Zone USA LLC*,
76 F.4th 1157 (9th Cir. 2023) ............................................................................... 11

Williams v. Quantum 3 Media, LLC No. 3:23-cv-00037, 2024 U.S. Dist. LEXIS
242311 (W.D.N.C. Feb. 27, 2024) ........................................................................ 20

**Statutes**
28 U.S.C. §1292(b) ............................................................................................... 5, 22

47 C.F.R. § 64.1200(c) .......................................................................................... 9, 14

47 C.F.R. § 64.1200(c)(2) ........................................................................................... 3

47 C.F.R. § 64.1200(c)(2)(iii) ..................................................................................... 9

47 C.F.R. § 64.1200(d) ................................................................................................ 9

47 C.F.R. §§ 64.1200(c)(2) .......................................................................................... 6

47 U.S.C. § 227(a)(1)(A) ........................................................................................... 19

47 U.S.C. § 227(b)(1)(a)(iii) ...................................................................................... 21

47 U.S.C. § 227(b)(1)(A)(iii) ..................................................................................... 15

47 U.S.C. § 227(b)(1)(B) ........................................................................................... 15

47 U.S.C. § 227(b)(2)(C) ........................................................................................... 15

47 U.S.C. § 227(c) ......................................................................................... 2, 16, 18

47 U.S.C. § 227(c)(1) ................................................................................................. 14

47 U.S.C. § 227(c)(1)(D) .............................................................................................. 9

47 U.S.C. § 227(c)(5) ......................................................................................... 3, 6, 9

47 U.S.C. § 227(e) ...................................................................................................... 10

47 U.S.C. § 227(e)(8)(A) ........................................................................................... 10

47 U.S.C. § 227(e)(8)(B) ........................................................................................... 10

47 U.S.C. § 277(c)(3) ................................................................................................. 14

C.F.R. § 64.1200(e) ................................................................................................... 14

U.S.C. § 227(c)(1) ...................................................................................................................5

**Rules**

Local Rule 7.3(d).................................................................................................................24

Rule 12(b)(6) ..................................................................................................................2, 7

Case 1:26-cv-00433-CCE-JEP     Document 8     Filed 07/13/26     Page 7 of 31

**INTRODUCTION**

Defendant R.J. Reynolds Tobacco Holdings, Inc. ("Defendant") hereby moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff Shawn Card's ("Plaintiff") entire Class Action Complaint (Doc. No. 1), and Count I therein, for alleged violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). As discussed in detail below, Plaintiff's only cause of action is for alleged violations of Section 227(c) of the TCPA based entirely on allegations that Defendant sent Plaintiff marketing text messages to Plaintiff's cellular telephone ("cellphone") without Plaintiff's consent while that number was registered on the National Do-Not-Call Registry.[1] But under straightforward principles of statutory construction required by recent Supreme Court decisions in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) (*McLaughlin*) and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (*Loper Bright*), Plaintiff's claim fails as a matter of law. Section 227(c) of the TCPA does not apply to text messages or cellphones. *See Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025) ("Pursuant to *McLaughlin* and *Loper Bright*, the Court agrees with the Defendant that based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages.").

---

[1] Defendant is not the properly named defendant because it does not send marketing text messages, as alleged in the Complaint. Defendant, however, acknowledges that for purposes of this motion the Court must accept as true the allegations in the Complaint. Defendant reserves the right to raise the issue of the correct entity defendant at the appropriate time if the Complaint survives this pleading challenge.

2

*McLaughlin* and *Loper Bright* mandate a fundamental shift in how courts are to handle TCPA cases such as this. Courts now must interpret and apply the TCPA according to its plain and unambiguous statutory language rather than in deference to viewpoints previously foisted on them by the Federal Communications Commission ("FCC"). This Court should now follow the many district courts that have applied *McLaughlin* and *Loper Bright* to dismiss TCPA claims with prejudice, as neither Section 227(c) nor its implementing regulations provide any basis to extend the statute's reach to text messages.[2]

## LEGAL BACKGROUND AND BASIS FOR MOTION TO DISMISS

Plaintiff brings a putative class action against Defendant under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and its corresponding regulation, 47 C.F.R. § 64.1200(c)(2) (together, the "DNC provisions"), alleging Defendant sent promotional text messages to Plaintiff's cellphone even though he had previously registered the number on the national do-not-call ("DNC") registry.

---

[2] A survey of post-*McLaughlin* and *Loper Bright* cases where district courts have held that Section 227(c) does not apply to text messages includes: *Radvansky v. Kendo Holdings*, No. 3:23-cv-00214-LMM, 2026 U.S. Dist. LEXIS 65154, at *6 (N.D. Ga. Feb. 12, 2026) (dismissal under Section 227(c)(5)); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811-TWT, 2026 U.S. Dist. LEXIS 32415, at *14-15 (N.D. Ga. Feb. 17, 2026) (same); *Richards v. Shein Distrib. Corp.*, No. 1:25-cv-01385-TWP-TAB, 2026 U.S. Dist. LEXIS 65697, at *13 (S.D. Ind. Mar. 26, 2026) (same); *Richards v. Fashion Nova, LLC*, No. 1:25-cv-01145-TWP-MKK, 2026 U.S. Dist. LEXIS 65696, at *13 (S.D. Ind. Mar. 26, 2026) (same); *James v. Smarter Contact, Inc.*, No. 8:25-CV-1657-KKM-SPF, 2026 U.S. Dist. LEXIS 68492 at *12 (M.D. Fla. Mar. 31, 2026) (same); *Irvin v. Sonic Indus. Servs.*, No. 3:25-cv-00242-LMM, 2026 U.S. Dist. LEXIS 90262, at *12 (N.D. Ga. Apr. 20, 2026) (same); *Lopresti v. Nouveau Essentials Mktg. LLC*, 5:25-cv-00282-CEM-PRL, 2026 U.S. Dist. LEXIS 39599, at *12-13 (M.D. Fla. Feb. 26, 2026) (report and recommendation); *Internicola v. Mortgagepros, LLC*, No. 6:25-cv-01613-AGM-LHP, 2026 U.S. Dist. LEXIS 129255, at *5-9 (M.D. Fla. June 10, 2026) (report and recommendation).

3

Plaintiff's claim fails for two simple reasons.  *First*, the TCPA's DNC provisions Plaintiff relies upon do not apply to text messages.  *Second*, they do not apply to cellphones.  In the wake of the Supreme Court's recent decision in *Loper Bright*, the cases that expanded the scope of these provisions to text messages and cellphones are no longer valid authority, as they relied entirely on the Federal Communications Commission's ("FCC") incorrect interpretation of the statute.  *Loper Bright* instructs that this Court not rely on cases that base their reasoning on the FCC's interpretation of the TCPA.  Instead, this Court should employ "the reading the [C]ourt would have reached if no agency were involved."  *Loper Bright*, 603 U.S. at 400 (overturning *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984) (*Chevron*)); *see also McLaughlin*, 606 U.S. at 168 (*McLaughlin*) (trial courts "not bound by the FCC's interpretation of the TCPA").

That reading mandates dismissal of the Complaint.  First, under the plain language of the TCPA, as written in 1991, dismissal is required.  Section 227(c)(5) creates a cause of action only for any "telephone call"—not for a text message—made in violation of the statute.  Section 227(c) never mentions text messages, notwithstanding Congress's subsequent amendments to the statute.  More fundamentally, ***text messaging did not exist in 1991 when the TCPA was enacted***.  The TCPA's DNC provisions have been improperly extended to text messages by the FCC's rulemaking.

Following *Loper Bright* and *McLaughlin*, this Court owes no deference to FCC edicts.  It must interpret the TCPA based on ordinary principles of statutory construction.

4

Such analysis yields only one conclusion: Under Section 227(c), a text message is not a "telephone call." Accordingly, Plaintiff's claim fails as a matter of law.

Second, Plaintiff's claim also fails because the TCPA's DNC provisions apply only to **residential** telephone subscribers, **not** cellphone subscribers. *See* 47 U.S.C. § 227(c)(1) (allowing FCC to issue regulations as it relates to residential telephone numbers). Here again, it was the FCC that improperly interpreted the term "residential telephone subscriber" to encompass cellphones. The plain language of the TCPA and its history, however, establish the term "residential telephone subscriber" as written in 1991 does not cover cellphones. Given *Loper Bright* and *McLaughlin*, the plain language of the TCPA controls, and past judicial deference to the FCC's interpretations is no longer appropriate. As the Supreme Court reiterated, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Loper Bright*, 603 U.S. at 385 (quoting *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)). The Court should thus also preclude Plaintiff from pursuing a claim based on text messages to his cellphone.

Given these fundamental flaws, amendment of the Complaint is not possible. The Court should grant this motion and dismiss this case with prejudice. Alternatively, if the Court denies this motion, it should certify the opinion for immediate appeal pursuant to 28 U.S.C. §1292(b).[3]

---

[3] A similar case alleging violations of the TCPA's DNC provisions through text messages was dismissed by the District Court for the Central District of Illinois on the same legal grounds as argued here. *Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp. 3d 894, 901-02 (C.D. Ill. 2025). An appeal of that dismissal is currently pending in the Seventh Circuit as *Seth Steidinger, et al. v. Blackstone Medical Services*, case no. 25-2398 (argued May 21, 2026).

<u>**PLAINTIFF'S ALLEGATIONS**</u>

In the Class Action Complaint, filed May 11, 2026 (the "Complaint"), Plaintiff alleges Defendant sent "repeated telemarketing text messages" to his "cellular telephone number," (XXX) 516-XXX (the "516 Number").[4] Dkt. 1, Complaint at ¶¶ 17, 23. He claims he "has never been a customer of Defendant and never consented to receive telemarketing text messages from Defendant." *Id.* at ¶ 22. Further, Plaintiff alleges he "listed his telephone number on the National Do-Not-Call Registry on September 10, 2025." *Id.* at ¶ 21.

Plaintiff says Defendant sent him unwanted text messages on February 16, March 20, April 3, and April 17, 2026. Complaint at ¶ 23. He does not allege he received ***any*** telephone calls from Defendant. *See id., generally.*

Plaintiff allegedly uses the 516 Number—his cellphone—"for personal, residential, and household purposes." *Id.* at ¶ 19. It is "not associated with any business, nor does Plaintiff use the telephone number for business purposes." *Id.* at ¶ 20.

Plaintiff asserts a claim under the TCPA, at 47 U.S.C. § 227(c)(5), and its corresponding regulations, at 47 C.F.R. §§ 64.1200(c)(2). *Id.* at ¶¶ 46-51. Plaintiff seeks to represent the following nationwide class of persons:

> **<u>National DNC Class</u>:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant encouraging the purchase of R.J. Reynolds Tobacco

---

[4] It is worth noting that nowhere in the Complaint does it allege that Plaintiff made any request to stop receiving the text messages, which he could have done by simply responding "stop" to the first text he received.

goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

*Id.* at ¶ 40.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level and have enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (*Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, a court need not accept conclusory allegations regarding the legal effect of the facts alleged or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted).

## **ARGUMENT**

### I. THIS COURT SHOULD INTERPRET AND APPLY SECTION 227(C) OF THE TCPA AS WRITTEN WITHOUT DEFERENCE TO FCC INTERPRETATIONS OF THE STATUTE

The Supreme Court's *Loper Bright* decision in 2024 eliminated *Chevron* deference, returning to the courts their traditional function "to decide whether the law means what the agency says." *Loper Bright*, 603 U.S. at 392. Courts must utilize "the reading the court

7

would have reached if no agency were involved." *Id.* at 400 (quotations and citation omitted). Critically in this case, "***every statute's meaning is fixed at the time of enactment***." *Id.* (quotations and citation omitted; emphasis added).

In June 2025, following *Loper Bright*, the Supreme Court issued its decision in *McLaughlin*. Before *McLaughlin*, district courts in the Fourth Circuit treated FCC Orders as dispositive under a statute known as the Hobbs Act, meaning the district court lacked jurisdiction to reach any ruling that was contrary to FCC rulings. *See, e.g., Hudson v. Palm Beach Tan, Inc.*, No. 1:23-cv-00486, 2024 U.S. Dist. LEXIS 165676, at *12-15, n. 1 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 164763 (M.D.N.C. Sept. 13, 2024).

This is no longer the law. Following the Supreme Court's decision in *McLaughlin*, district courts are not "bound by the FCC's interpretation of the TCPA," and instead must analyze the statute "under ordinary principles of statutory interpretation." 606 U.S. at 168. As detailed herein, doing so mandates dismissal of Plaintiff's Complaint.

## II. SECTION 227(C) DOES NOT APPLY TO TEXT MESSAGES

With *Chevron* overturned and the Hobbs Act abdicated, the issue before the Court is a simple matter of statutory interpretation: whether a text message is a "telephone call" under section 227(c)(5). Clearly, it is not.

### A. Section 227(c) and its Implementing Regulations do not Reference Text Messages.

First, the Court considerS "whether the [statutory] language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Ignacio v. United States*, 674

8

F.3d 252, 254 (4th Cir. 2012) (citation omitted). "[U]nless otherwise defined, words will

be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).

Section 227(c) affords a private right of action to "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Neither Section 227(c) nor its implementing regulations, 47 C.F.R. § 64.1200(c) and (d), include the phrases "text message" or "SMS message." Only "call", "telephone call", and "artificial or prerecorded-voice telephone call" appear in Section 227(c) and its implementing regulations. *See* 47 U.S.C. § 227(c)(1)(D), (c)(5); 47 C.F.R. § 64.1200(c)(2)(iii), (d).

### B. The Statutory Meaning of "Telephone Call" in 1991—and Today—does not Include Text Messages, as Reflected in the Language of the TCPA and Amendments Thereto.

This is not complicated. As written, Section 227(c) applies to telephone calls, not text messages. When the statutory language is clear, the "judicial inquiry is complete." *Crespo v. Holder*, 631 F.3d 130, 136 (4th Cir. 2011) (citation omitted). The Complaint should be dismissed.[5]

But even if the Court were to find an ambiguity, other principles of statutory construction support dismissal. If a statute is vague or ambiguous, courts should look to

---

[5] In the wake of *McLaughlin* and *Loper Bright*, many District Courts have adopted this straightforward reasoning to dismiss text message claims. *See supra*, n.2.

Congress's intent and the legislative history.  *GGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 53-54 (4th Cir. 2011).  Because text messaging "did not exist in 1991 when the TCPA was enacted," Congress could not have intended for "telephone call" to include a text message.  *Salcedo v. Hanna*, 936 F.3d 1162, 1168-69 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023); *see also Blow v. Bijora, Inc.*, 191 F.Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017) (noting "first text message was sent on December 3, 1992").  As the Supreme Court emphasized in *Loper Bright*: "every statute's meaning is fixed at the time of enactment."  603 U.S. at 400 (internal quotation marks omitted).

Importantly, and consistent with a narrower interpretation of "telephone call," Congress later amended the TCPA to bring text messages within its scope under a **different** provision regarding Caller ID requirements.  *See* Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). In doing so, Congress specifically distinguished between "a call made using a voice service" from a "text message sent using a text messaging service."  47 U.S.C. § 227(e)(8)(A), (B).[6]  If Congress intended for the term "telephone call" to include text messages, then Congress would have just prohibited "calls" using false Caller ID

---

[6] "Where Congress has utilized distinct terms within the same statute, the applicable canons of statutory construction require that we endeavor to give different meanings to those different terms."  *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005); *see also Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . . different terms usually have different meanings.").

information.  *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'") (quoting *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985)); *Davis v. CVS Pharm., Inc.*, 797 F.Supp. 3d 1270, 1274 (N.D. Fla. 2025) ("[U]se of the phrase 'telephone call or message' in a neighboring provision . . . shows that Congress does not use the term 'telephone call' to encompass all 'messages.'").

Indeed, by 2018, Congress knew the difference between a call and a text message. Its decision not to amend Section 227(c) to include text messages is thus telling, and the Court should not read language into the statute that plainly is not there.  *Facebook, Inc. v. Duguid*, 592 U.S. 395, 397 (2021) (*Duguid*) ("this Court cannot rewrite the TCPA to update it for modern technology"); *see also Badaracco v. C.I.R.*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

The FCC obviously believed it was justified as a ***policy*** matter to expand the TCPA to account for "[n]ew technologies" the statute did not address.  *See Notice of Proposed Rulemaking*, 17 FCC Rcd. 17459, ¶ 1 (2002) ("2002 NPRM"); *see also In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, Appendix B, ¶ 2 (2003) ("2003 Order") (discussing advent of "new technologies"); *id.* at ¶ 165 (addressing Section 227(b) and proclaiming the term "call" under the TCPA "encompasses both voice calls and

11

text calls").[7]  But the Supreme Court's post-*Loper Bright* directive is clear: even if the TCPA is arguably "outdated," courts "cannot rewrite the TCPA to update it for modern technology."  *Duguid*, 592 U.S. at 397 (2021).[8]  "Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."  *Loper Bright*, 603 U.S. at 403; *see also Stockdale v. Skymount Prop. Grp., LLC*, 2026 U.S. Dist. LEXIS 42954, at *6 (N.D. Ohio Mar. 3, 2026) (dismissing text message claims under Section 227(c)(5); "The Court acknowledges, however, that its decision—as dictated by *Loper Bright* and *McLaughlin*—arguably stands in contrast to decades of FCC agency interpretations, court decisions, and even congressional intent. Such contradictory decisions are the natural consequence of the Supreme Court overruling *Chevron*[.]").

### C. Common Usage of the Terms "Telephone Call" and "Text Message" Confirms they are Two Distinct Methods of Communication.

---

[7] The FCC failed to identify any statutory basis (or other authority) for concluding that a text message was a "call."  *See* 2003 Order, at ¶ 165.  Rather, it made the decree because it viewed this outcome as consistent with the goals of the statute.  *See id.*  And courts fell in line, one by one, based on the belief they were obligated to defer to FCC edicts.  *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (courts "must defer" to the FCC's determination that a text message was a "call"); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (deferring wholesale to the FCC's 2003 Order); *Northrup v. Innovative Health Ins. Partners, LLC*, No. 8:17-CV-1890-T-36JSS, 2019 U.S. Dist. LEXIS 72823, at *6, n.4 (M.D. Fla. Jan. 3, 2019) (same); *Hudson v. Palm Beach Tan, Inc.*, 2024 U.S. Dist. LEXIS 165676, at *16-18, n.6 (concluding receipt of text messages can support Section 227(c)(5) claim, but without considering *McLaughlin*).

[8] In *Duguid*, the Supreme Court went out of its way to note it was not addressing this issue. 592 U.S. at 400, n.2 ("Neither party disputes that the TCPA's prohibition also extends to sending unsolicited text messages.  We therefore assume that it does without considering or resolving that issue.") (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)).

12

The statutory distinction between telephone calls and text messages comports with common sense and common usage of such terms. A text message, under its ordinary, contemporary, common meaning is ***not*** a telephone call. As a Northern District of Florida court recently explained:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Davis v. CVS Pharm., Inc.*, 797 F.Supp. 3d at 1273; *see El Sayed v. Naturopathica Holistic Health, Inc.*, 8:25-cv-00846, 2025 U.S. Dist. LEXIS 209469, at *3 (M.D. Fla. Oct. 24, 2025) (granting motion to dismiss Section 227(c)(5) claim) ("in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication").[9]

Whether by the plain language of the TCPA, statutory interpretation, or common usage, a text message is not a "telephone call." Plaintiff's claim fails and any attempt to amend would be futile.

### III. SECTION 227(C) DOES NOT APPLY TO CELLPHONES

#### A. Statutory and Regulatory Background

---

[9] Contemporary dictionary definitions also make the distinction clear. *Compare* "call" ("the act of speaking to or attempting to reach someone by telephone or by a similar online communication service," examples of which include "video call," "internet call," and "FaceTime call") *with* "text message" ("a short message sent electronically usually from one cell phone to another"). *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com (accessed July 11, 2026).

Plaintiff's claim fails for a separate reason: the text messages were allegedly sent to his cellphone, not to a "residential telephone." Complaint at ¶ 23. The TCPA empowered the FCC to issue regulations "to protect ***residential telephone subscribers'*** privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). The statute only authorized the FCC to "establish[] and operat[e] a single national database to compile a list of telephone numbers of ***residential subscribers*** who object to receiving telephone solicitations." 47 U.S.C. § 277(c)(3) (emphasis added).

Notwithstanding the clear import of the term—"***residential*** telephone subscriber"— in 2003 the FCC decided that 47 C.F.R. § 64.1200(c) could apply to cellphones. *See* 47 C.F.R. § 64.1200(e) ("[t]he rules set forth in paragraph (c) . . . are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order," issued in 2003). The referenced FCC Order states:

> [W]e conclude that wireless subscribers may participate in the national do-not-call list. . . . [W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers."

2003 Order at ¶ 36. Because this order contravenes the plain language of the TCPA, it must be disregarded here.

### B. "Residential Telephone Subscriber" Plainly Refers to a Subscriber of a Landline Telephone.

Following *Loper Bright* and *McLaughlin*, this Court is not bound by the FCC's 2003 Order. The Court should interpret the TCPA using ordinary principles of statutory interpretation. *See McLaughlin,* 606 U.S. at 155. Again, there is only one proper

14

conclusion given the statute's plain language: the meaning of "residential telephone subscriber" does ***not*** encompass a cellphone subscriber. The claim necessarily fails.

### i. Basic rules of statutory interpretation establish that "residential" does not include "cellular."

The plain language of the TCPA forecloses any notion that the DNC provisions apply to cellphones. Throughout the statute, Congress distinguishes between "residential" and "cellular" telephone lines. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (identifying prohibited calls to "any telephone number assigned to a . . . cellular telephone service . . . .") *with* 47 U.S.C. § 227(b)(1)(B) (identifying prohibited calls to "any residential telephone line"); *see also* 47 U.S.C. § 227(b)(2)(B), (C) (allowing FCC to make regulations broadly exempting calls to residential lines and cellphones, respectively);

This deliberate statutory distinction should not be ignored. Indeed, "[i]n construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Blurring the line between cellphones and residential telephones would create a domino effect throughout the TCPA, depriving distinct statutory terms and provisions of their distinct meanings. "Even if one might hypothesize 'important reasons for treating residential and wireless telephone lines the same,' [] the TCPA itself presupposes the contrary—that calls to residential and wireless numbers warrant differential treatment." *ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018); *see Barr v. Am. Ass'n of Pol. Consultants, Inc*, 591 U.S. 610, 638 (2020) (Breyer, J. concurring) (distinguishing between residential and cellular lines) ("The statute limits robocalls to residential landlines . . . . The only provision before us today, however,

15

concerns robocalls to cell phones . . . .").  If Congress intended 47 U.S.C. § 227(c) to encompass cellphones, it knew how to do so.  It included cellphones elsewhere in the statute.[10]

The FCC has also separately regulated residential and cellular lines.  *See, e.g.*, *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1859 n.4 (2012) ("to avoid confusion as to which rules apply to calls directed to a cellphone number (wireless) or to a residential telephone line (wireline), we will refer to such calls as being placed to a 'wireless number' and to a 'residential line,' respectively"); *Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 29 FCC Rcd. 3432, 3439, n.4 (2014) ("We use 'residential' to mean 'residential wireline' consumers for purposes of this order, and to be consistent with the TCPA's terminology.").

The plain language of the TCPA is the beginning and end of this analysis: "residential telephone subscriber" does not include cellphones, so Plaintiff's claim fails.

### ii. A historical analysis likewise demonstrates that "residential telephone subscriber" refers to landlines, not cellphones.

This Court should evaluate the TCPA as written in 1991.  The dissent in *Chennette v. Porch.com*, a Ninth Circuit case predating *Loper Bright* and *McLaughlin*, is instructive:

> The statute does not define the key term "residential telephone subscribers." At the time Congress enacted the TCPA, the most applicable dictionary definition for "residence" was "[a] house where one's home is; a dwelling

---

[10] The absence of any reference to cellular telephones in 47 U.S.C. § 227(c) does not allow the FCC to fill the gap; such a "theory has it backwards . . . ."  *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1082 (D.C. Cir. 2017) ("FCC may only take action that Congress has authorized.").

> house." Residence, Black's Law Dictionary, Sixth Edition (1990). The dictionary defines the word "residential" to mean "of, relating to, or connected with residence or residences." Residential, Webster's Third New International Dictionary (1981). Thus, a "residential telephone" is by its terms a telephone connected with a residence. A cell phone, which is mobile and not connected to a house, fixed abode, or dwelling, is not "residential" under the definitions provided by dictionaries current when the TCPA was enacted.

*Chennette v. Porch.com*, 50 F.4th 1217, 1233 (9th Cir. 2022) (Ikuta, J. dissenting).[11] Citing legislative history, Judge Ikuta also noted "[t]he common understanding that the terms 'residential' and 'residential telephone' refer to a land line in the home." *Id.* at 1233-34.[12]

This view is not surprising: "[T]he plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellphone, which can be used anywhere." *Shelton v. Advance Funding, LLC*, 378 F.Supp. 3d 356, 362, n.7 (E.D. Pa. May 8, 2019); *see also Salcedo*, 936 F.3d at 1169 ("[T]he findings in the TCPA show a concern for privacy within the sanctity of the home . . . . By contrast, cell phones are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion").

Similarly, when the FCC first evaluated implementing a national do-not-call registry, it did so under the subheading "Alternatives to Restrict Telephone Solicitation *to*

---

[11] Notably, the defendant in *Chennette* conceded that "residential telephone subscriber" covered cellular telephones, so there was no adversarial consideration of the issue. 50 F.4th at 1223. *Chennette* also predated *Loper Bright*, so the majority opinion is unpersuasive as it effectively found the FCC's views controlling. *See id.* at 1223-25.

[12] Judge Ikuta concluded that the 2003 Residential Subscriber Guidance should be viewed as enabling coverage of cellphones used "in the[] home[]" and "in the same manner" as a "residential wireline phone[]," and believed this interpretation should be given *Chevron* deference. *Chennette*, 50 F.4th at 1238. Of course, *Chevron* has since been overturned.

*Residences*." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8758 (1992) (emphasis added); *see also Tel. Consumer Prot. Act Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, & the Use of Facsimile Machines*, 8 FCC Rcd. 506, 508 (1993) (discussing when "residential customers" can file suit under 47 U.S.C. § 227(c)). Legislative history also refers specifically to "residential telephone customers" while separately discussing cellphones. H.R. REP. 102-317, 6; S. REP. 102-178, 1 ("[T]he purposes of the bill are to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls *to the home* . . . .") (emphasis added).

Critically, when the FCC's 2003 Order was adopted—12 years after the TCPA—not even the FCC claimed the term "residential telephone subscriber" was *intended* in 1991 to cover cellphones. When it sought comment on this issue, the FCC asked, "should wireless telephone numbers [] be considered 'residential telephone numbers' *for the purposes of the Commission's rules* on telephone solicitations?" 2002 NPRM, 17 FCC Rcd. at 17485, ¶ 44 (emphasis added). And in its Order, it relied on policy rationales for expanding the statute's coverage a dozen years after the statute's enactment. 2003 Order, 18 FCC Rcd. at 14039, ¶ 36. The FCC also appears to have been aware of the problems its interpretation could cause elsewhere, ensuring its interpretation was limited to Section 227. *Id.* at 14039, n.139.

Plaintiff may point out that cellphones have supplanted landlines for many Americans. But the evolution of modern phone usage cannot alter the TCPA's plain language as written by Congress. The Supreme Court encountered a similar issue under

18

the TCPA in *Duguid* when it interpreted the statutory term "automatic telephone dialing system." 592 U.S. at 399. When faced with the argument that the term should be interpreted in a way that would avoid rendering it "senescent," the Court held:

> Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked. "Senescent" as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading of § 227(a)(1)(A). This Court must interpret what Congress wrote . . . .

*Id.* at 409.

The fact that the TCPA may include anachronistic provisions does not give the courts or the FCC grounds to rewrite it. That job lies with Congress.

### iii. This Court should follow those authorities interpreting Section 227(c)(5) as applying only to residential lines.

The Fourth Circuit has not yet addressed whether cellphone users are "residential telephone subscribers" under Section 227(c)(5). District courts considering the issue are split. *Gaker v. Q3M Ins. Sols.,* No. 3:22-cv-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919, at *5-7 (W.D.N.C. Feb. 8, 2023) (cellphones are not residential telephones); *but see Newman v. SGMS, Inc.*, No. 3:25-cv-00042, 2025 U.S. Dist. LEXIS 169748, at *5 (W.D.N.C. Sept. 2, 2025) (collecting cases and holding that cellphones can qualify as residential under Section 227(c)(5)).

Here, the Court should follow *Gaker* and limit Section 227(c) to landline telephones as Congress intended. Plaintiff will likely point to recent district court cases in the Fourth Circuit finding the term "residential subscriber" can include cellphones, but these cases should rightly be disregarded. In *Williams v. Quantum 3 Media, LLC*, for example, the

19

court disagreed with *Gaker* but only out of deference to the FCC's 2003 Order, relying on pre-*Loper Bright* and pre-*McLaughlin* authority that found the FCC's interpretations dispositive. No. 3:23-cv-00037, 2024 U.S. Dist. LEXIS 242311, at *9-10 (W.D.N.C. Feb. 27, 2024) (citing *Chevron,* 467 U.S. at 844). In *Hudson v. Palm Beach Tan, Inc.*, the district court did not cite any case from this Circuit actually analyzing whether cellphones can be "residential" for purposes of Section 227(c).[13] 2024 U.S. Dist. LEXIS 165676, at *7-9. In *Slate v. Healthy Spirit, LLC*, the Maryland District Court did not include any discussion of whether cellular phones were "residential," and instead relied improperly on FCC regulations. No. MJM-23-3034, 2025 U.S. Dist. LEXIS 14427, at *6-7 (D. Md. Jan. 28, 2025); *see also Connor v. Wishnia*, No. 2:24-cv-06310, 2025 U.S. Dist. LEXIS 155922, at *6-7 (D.S.C. Jul. 15, 2025) (same), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 154494 (D.S.C. Aug. 11, 2025). Lastly, *Newman v. SGMS, Inc.*, in claiming these decisions established a "majority," failed to substantively consider the issue at all. 2025 U.S. Dist. LEXIS 169748, at *5-7; *see also Laccinole v. Cova Home Realty LLC*, No. 2:21-cv-00507, 2026 U.S. Dist. LEXIS 46327, at *35 (E.D. Va. Feb. 11, 2026) (finding, without

---

[13] *See Fischman v. MediaStratX, LLC*, No. 2:20-cv-00083, 2021 U.S. Dist. LEXIS 149734, (E.D.N.C. Aug. 10, 2021) (addressing standing but not whether cellphone is residential under Section 227(c)); *Boardman v. Green Dot Corp.*, No. 3:21-cv-00174, 2021 U.S. Dist. LEXIS 156403, at *5 (W.D.N.C. Aug. 19, 2021) (finding "no clear consensus" as to whether cellular telephones are "residential" under the TCPA); *Davis v. Reliance First Cap., LLC*, No. 7:22-cv-00018, 2023 U.S. Dist. LEXIS 24055, at *10, n.1 (E.D.N.C. Feb. 13, 2023) (discussing pleading standards generally; accepting conclusory allegation that phone was residential); *Tessu v. AdaptHealth, LLC*, No. 1:23-cv-00364, 2023 U.S. Dist. LEXIS 145211, at *13 (D. Md. Aug. 17, 2023) (finding it was bound by 2003 FCC Order under Hobbs Act); *Nickson v. Advanced Mktg. & Processing, Inc.*, No. 8:22-cv-02203, 2023 U.S. Dist. LEXIS 135043, at *16, n.6 (D. Md. Aug. 2, 2023) (acknowledging split in authority and "assum[ing], without deciding, that his number is residential").

20

substantive analysis, that allegation cellphone used for "residential purposes only" sufficient to support claim), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 44954 (E.D. Va. Mar. 4, 2026).

Again, the TCPA and corresponding FCC regulations distinguish between residential lines and cellular lines throughout. Calls to cellular phones are addressed in a different section of the TCPA than the DNC provisions. *See* 47 U.S.C. § 227(b)(1)(a)(iii) (restricting autodialed calls to phone numbers "assigned to a [] ***cellular telephone service*** . . .") (emphasis added); *see also Duguid*, 592 U.S. at 409 ("The [TCPA] separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones . . .").

After using the word "cellular" in Section 227(b) of the TCPA, Congress then omitted that language from Section 227(c), reflecting a clear intent that the DNC provisions would apply only to residential phones, not cellular phones. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"); *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.").

A residential telephone is a type of telephone, and a subscriber is the subscriber to a residential telephone. Had Congress intended Section 227(c) to apply to any telephone

21

subscriber, whether residential or cellular, it would have simply used the term "telephone subscriber." It did not.

As the Supreme Court made clear in *Duguid*, the TCPA is not an "agile tool" to address changing technologies and prevent unwanted calls. *See* 592 U.S. at 409. Policy goals cannot be used to alter a statute's plain language. *See Bais Yaakov*, 852 F.3d at 1083 ("[T]he fact that the agency believes its [rule] is good policy does not change the statute's text."). This Court should thus adhere to the plain text of the TCPA and the meaning of the term "residential telephone subscriber" as written in 1991, irrespective of how technological preferences have shifted. "Residential telephone subscriber" does not encompass cellphones.

## IV.    BECAUSE AMENDMENT WOULD BE FUTILE, THE COURT SHOULD DISMISS WITH PREJUDICE

Dismissal with prejudice is warranted where, as here, "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability." *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008). Because the TCPA's DNC provisions do not apply to text messages or cellphones, Plaintiff cannot amend the Complaint to state a viable claim. Accordingly, the Complaint should be dismissed with prejudice.[14]

---

[14] If the Court denies this motion, certification for immediate appeal of the Court's order would be appropriate under 28 U.S.C. §1292(b). This motion "involves a controlling question of law" and "there is substantial ground for difference of opinion" on these issues. Moreover, given that the Fourth Circuit has not weighed in on these purely legal issues, which will be dispositive here, there is little question that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. §1292(b).

## CONCLUSION

For these reasons, Defendant respectfully requests this Court grant Defendant's motion to dismiss Plaintiff's Complaint with prejudice.

Dated: July 13, 2026

WOMBLE BOND DICKINSON (US) LLP

*/s/ John F. Morrow, Jr.*
John F. Morrow, Jr.
NC Bar No. 23382
One West 4th Street, 12th Floor
Winston-Salem, NC 27101
Tel.: 336.721.3600
Fax: 336.733.8429
Email: John.Morrow@wbd-us.com

Tomio B. Narita*
CA Bar No. 156576
Samuel R. Melamed*
CA Bar No. 301303
GA Bar No. 234836
50 California Street, Suite 2800
San Francisco, CA 94111
Tel.: 415.433.1900
Fax: 415.433.5530
Email: Tomio.Narita@wbd-us.com
Email: Samuel.Melamed@wbd-us.com

Genevieve Walser-Jolly*
CA Bar No. 262784
400 Spectrum Center Drive, Suite 1700
Irvine, CA 92618
Tel.: 714.557.3800
Fax: 714.557.3347
Email: Genevieve.Walser-Jolly@wbd-us.com

Counsel for R.J. Reynolds Tobacco Holdings, Inc.

*\* Special Appearance Per Local Rule 83.1(d)*

23

# LOCAL RULE 7.3(D) CERTIFICATION OF WORD COUNT

The undersigned hereby certifies that this *Memorandum of Law* (excluding the case caption, signature blocks, and certifications) consists of less than 6,250 words and therefore complies with Local Rule 7.3(d). The undersigned relies on the word count feature of Microsoft Word in making this certification.

*/s/ John F. Morrow, Jr.*
John F. Morrow, Jr.

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have on this day electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record who have registered to receive such filings.

Date: July 13, 2026

/s/ *John F. Morrow, Jr.*
John F. Morrow, Jr.