IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:26-cv-433-CCE (JEP)

| | |
|---|---|
| SHAWN CARD, individually and on behalf of all others similarly situated, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| R. J. REYNOLDS TOBACCO HOLDINGS, INC. | : |
| | : |
| | : |
| Defendant. | : |
| | : |

_____/

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... 7

**BACKGROUND** ............................................................................................................... 8

**ARGUMENT** ..................................................................................................................... 9

   **I.**     **Cellular Telephone Numbers are Protected under National Do Not Call Registry Provision** ............................................................................................................................ 9

   **II.**    **Text Messages are "Telephone Calls" under 47 U.S.C. § 227(c)(5).** ........................... 12

      **A.**    **The Plain Text Supports the Conclusion that a Text is a Call.**................................... 13

      **B.**    **Section 227(c)'s Text and Fourth Circuit Precedent Both Confirm That Texts Are Calls.**............................................................................................................................. 15

      **C.**    **Congress Ratified the FCC's Interpretation, and, In Any Event, the FCC's Interpretation Warrants Deference.**..................................................................................... 16

      **D.**    **Defendant's interpretation would sever § 227(c)(5) from the regulations it was enacted to enforce.** ......................................................................................................... 17

      **E.**    **Defendant's Cases and its Related Arguments do not Withstand Scrutiny.**........... 18

      **F.**    **The Seventh Circuit's Decision in Steidinger Does Not Warrant a Different Result.** 22

   **III.**   **Defendant's Contrary Authorities from Out of this Circuit Do Not Create a Persuasive Competing Interpretation of Section 227(c).**...................................................... 23

   **IV.**   **In the Alternative, Any Dismissal Should Be Without Prejudice and With Leave to Amend.** .............................................................................................................................. 26

**CONCLUSION** ................................................................................................................ 26

1

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Fiesta Nissan, Inc.*,
  2026 U.S. Dist. LEXIS 1415 (S.D. Tex. Jan. 26, 2026) ........................................................... 14

*Cacho v. McCarthy & Kelly, LLP*,
  739 F. Supp. 3d 195 (S.D.N.Y. 2024) .................................................................................. 9, 10

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016).................................................................................................................. 12

*Chennette v. Porch.com*,
  50 F.4th 1217 (9th Cir. 2022) .................................................................................................... 9

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986).................................................................................................................. 16

*Cooke-Bates v. Bayer Corp.*,
  No. 2:10-cv-261, 2010 U.S. Dist. LEXIS 121255 (E.D. Va. Nov. 16, 2010) .......................... 24

*Davis v CVS Pharmacy, Inc.*,
  797 F. Supp. 3d 1270 (N.D. Fla. 2025) .................................................................................... 19

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021).................................................................................................................. 13

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000).................................................................................................................. 18

*Forest Grove Sch. Dist. v. T.A.*,
  557 U.S. 230 (2009).................................................................................................................. 16

*Gager v. Dell Fin. Servs., LLC*,
  727 F.3d 265 (3d Cir. 2013)........................................................................................................ 9

2

*Hatch v. Demayo*,
No. 1:16-cv-925, 2018 U.S. Dist. LEXIS 169737 (M.D.N.C. Sept. 29, 2018) ...................... 24

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) .................................................................... 14, 22, 24

*Hudson v. Palm Beach Tan, Inc.*,
No. 1:23-cv-486, 2024 WL 4190513 (M.D.N.C. Aug. 12, 2024) .................................... 11, 25

*Hudson v. Palm Beach Tan, Inc.*,
2024 WL 4188310 (M.D.N.C. Sept. 13, 2024)..................................................... 11, 25

*Hulce v. Zipongo Inc.*,
132 F.4th 493 (7th Cir. 2025) ................................................................................ 17

*Isaacs v. USHealth Advisors, LLC*,
2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) ......................................................... 10, 11

*Jackson v. Direct Bldg. Supplies LLC*,
2024 WL 184449 (M.D. Pa. Jan. 17, 2024).............................................................. 10

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025) ................................................................. 19, 20

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ..................................................................... 13, 16, 25

*Lirones v. Leaf Home Water Sols., LLC*,
2024 WL 4198134 (N.D. Ohio Sept. 16, 2024)........................................................ 10

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)........................................... 9, 11, 12, 16, 17, 21, 22, 24, 25, 27

*Lysaght v. State of N.J.*,
837 F. Supp. 646 (D.N.J. 1993) ............................................................................ 15

Case 1:26-cv-00433-CCE-JEP    Document 15    Filed 08/14/26    Page 4 of 29

*McGonigle v. Teleflora, Inc.*,
No. 1:25-cv-00807-MSN-WEF (E.D. Va. Mar. 13, 2026) .................................................. 13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ........................................................... 9, 11, 12, 16, 17, 23, 25, 27

*Mey v. Liberty Home Guard, LLC*,
2026 WL 486556 (N.D.W. Va. Jan. 5, 2026) ............................................................ 13, 16, 25

*Myles v. Laffitte*,
881 F.2d 125 (4th Cir. 1989) ................................................................................. 24

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019) ................................................................................................. 9

*Newman v. SGMS, Inc.*,
2025 U.S. Dist. LEXIS 169748 (W.D.N.C. Sept. 2, 2025) ....................................... 12

*Pa. Dep't of Corr. v. Yeskey*,
524 U.S. 206 (1998) ............................................................................................ 15, 19

*Pfizer, Inc. v. Gov't of India*,
434 U.S. 308 (1978) .............................................................................................. 10

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) ........................................................................... 20

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ............................................................................ 14, 21

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ........................................................................................... 11, 17

*Stamper v. Medicredit, Inc.*,
2019 U.S. Dist. LEXIS 77733 (D.S.C. Mar. 27, 2019) ........................................... 8

4

*Stamper v. Medicredit, Inc.*,
  2019 U.S. Dist. LEXIS 77435 (D.S.C. May 8, 2019)............................................................... 8

*Steidinger v. Blackstone Med. Servs.*,
  2026 WL 2028517 (7th Cir. July 14, 2026)................................................................. 22, 23, 24

*Stockdale v. Skymount Property Group, LLC*,
  No. 1:25 CV 1282, 2026 WL 691842 (N.D. Ohio Mar. 3, 2026)............................................ 19

*Taha v. Momentive Software, Inc.*,
  2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026) ....................................................... 15

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*,
  848 F.3d 330 (4th Cir. 2017) ................................................................................................... 23

*Williams v. Myler Disability, LLC*,
  2020 WL 6693134 (W.D.N.C. Nov. 12, 2020)........................................................................ 16

*Wilson v. Better Mortg. Corp.*,
  811 F. Supp. 3d 631 (S.D.N.Y. Dec. 5, 2025) ........................................................................ 14

*Wilson v. Hard Eight Nutrition LLC*,
  2025 WL 1784815 (D. Or. June 27, 2025) .............................................................................. 10

*Wilson v. MEDVIDI*,
  2025 WL 2856295 (N.D. Cal. Oct. 7, 2025)............................................................................ 20

*Zinski v. Liberty Univ., Inc.*,
  2025 U.S. Dist. LEXIS 64425 (W.D. Va. Apr. 3, 2025) ......................................................... 24

**Statutes**

28 U.S.C. § 1292................................................................................................................. 23, 24, 27

47 U.S.C. § 227............................................................................................................................ *passim*

Case 1:26-cv-00433-CCE-JEP    Document 15    Filed 08/14/26    Page 6 of 29

Fed. R. Civ. P. 15 ................................................................................................................ 26

**Regulations**

47 C.F.R. § 64.1200 ..................................................................................................... 9, 18, 23

**Administrative Decisions & Guidance**

*In re Call Authentication Trust Anchor*,
  36 FCC Rcd. 8827 (2021) ........................................................................................ 8

*In re Rules & Regs. Implementing the TCPA*,
  18 FCC Rcd. 14014 (2003) ........................................................................ 9, 11, 17, 21

6

**INTRODUCTION**

Defendant asks this Court to adopt two statutory interpretations that would detach the Telephone Consumer Protection Act's National Do Not Call protections from the way Americans actually use telephones. According to Defendant, Section 227(c) protects only landline subscribers and regulates only audible voice calls, leaving consumers without a private remedy when the same unwanted solicitation is delivered to their personal cellular telephone by text message. Neither the statutory text nor the weight of authority supports that result.

First, cellular telephone subscribers are "residential telephone subscribers" when, as alleged here, they subscribe to and use their numbers for personal, residential, and household purposes. Section 227(c) protects a category of subscribers, not an obsolete category of telephone equipment. Congress knew how to limit TCPA provisions to a particular type of telephone "line" or "service" when it wished to do so. In Section 227(c), however, it protected residential telephone subscribers and authorized regulations safeguarding their privacy.

Second, a telemarketing text message is a "telephone call" under Section 227(c)(5). The ordinary meaning of "call" at the time of enactment encompassed an effort to communicate by telephone, while the TCPA expressly defines a "telephone solicitation" to include a commercial "call or message." 47 U.S.C. § 227(a)(4). The Supreme Court, the courts of appeals to address the issue, courts within the Fourth Circuit, and the FCC have consistently treated text messages as calls under the TCPA. The distinction Defendant attempts to draw between an oral and written telephone solicitation has no basis in Section 227(c)'s text, structure, or consumer-privacy purpose.

Finally, even if the Court were to find some deficiency in the Complaint, dismissal with prejudice would still be unwarranted, and Plaintiff should be granted leave to amend.

7

Americans are subject to billions of unwanted telemarketing calls and text messages per year. *See In re Call Authentication Trust Anchor*, 36 FCC Rcd. 8827, 8832 n.41 (May 21, 2021). Such is the case here as Plaintiff Shawn Card brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), alleging that Defendant R.J. Reynolds Tobacco Holdings, Inc. transmitted repeated unsolicited telemarketing text messages to Plaintiff's residential cellular telephone number after it had been registered on the National Do-Not-Call Registry for more than thirty-one days. Compl., ECF No. 1 ¶¶ 15–23, 46–51. According to the Complaint, Plaintiff owns and uses cellular telephone number (XXX) 516-XXXX exclusively for personal, residential, and household purposes. ECF No. 1 ¶¶ 17–20. *Id.* ¶¶ 17–20. Plaintiff personally registered that number on the National Do-Not-Call Registry on September 10, 2025, and has never been a customer of Defendant or provided consent to receive Defendant's telemarketing text messages. *Id.* ¶¶ 21–22. Despite Plaintiff's registration on the National Do-Not-Call Registry and lack of consent, Defendant allegedly transmitted multiple promotional text messages to Plaintiff on February 16, March 20, April 3, and April 17, 2026. ECF No. 1 ¶ 23. Plaintiff alleges that these messages advertised Defendant's tobacco products through discounts, sweepstakes, giveaways, hyperlinks to promotional websites, and other marketing content intended to encourage purchases of Defendant's products. *Id.* ¶¶ 24–38.

Because the TCPA is a remedial statute, courts have held the TCPA should be "construed to benefit consumers." *Stamper v. Medicredit, Inc.*, No. CV 7:18-1407-BHH-KFM, 2019 U.S. Dist. LEXIS 77733, 2019 WL 2028598, at *2 (D.S.C. Mar. 27, 2019), *report and recommendation adopted*, No. CV 7:18-1407, 2019 U.S. Dist. LEXIS 77435, 2019 WL 2026828 (D.S.C. May 8, 2019) (quoting *Gager v. Dell Fin. Servs.*, LLC, 727 F.3d 265, 271 (3rd Cir. 2013)).

## I. Cellular Telephone Numbers are Protected under National Do Not Call Registry Provision

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As both the FCC and courts have long recognized, the ordinary meaning of the Do Not Call List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, *Chennette v. Porch.com*, 50 F.4th 1217, 1223–1225 (9th Cir. 2022); 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (collecting cases). Notably, the panel dissent in *Chennette* that Defendant invokes elsewhere addressed an issue the defendant in that case had already conceded, *see* 50 F.4th at 1223, and the case predates both *Loper Bright* and *McLaughlin* altogether, rendering the panel majority's contrary holding, which this Court should follow, considerably more persuasive than the dissent.

Start with what the statute prohibits: unwanted "telephone solicitations." 47 U.S.C. § 227(c)(3). "Telephone solicitation" is a defined term in the TCPA. *Id.* § 227(a)(4). In essence, it means "a telephone call or message" "which is transmitted to any person" for commercial purposes, subject to certain exceptions. *Id.*[1] Solicitations to cell phones fit that definition. First, to

---

[1] Here is the full definition: "The term 'telephone solicitation' means the initiation of *a telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, *which is transmitted to any person*, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4) (emphases added).

state the obvious, a cell phone is a "telephone." *See, e.g.*, 47 U.S.C. §§ 227(b)(1)(A)(iii) (using the phrase "cellular telephone"). Finally, "any person" has a "naturally broad and inclusive meaning." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978).

Next, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Unpacking that language yields the same conclusion.

For starters, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). So, a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*; *Wilson v. Hard Eight Nutrition LLC*, No 6:25-cv-144, 2025 WL 1784815, at *5 (D. Or. June 27, 2025).

That leaves the word "residential," which Defendant's argument hinges on. But that word doesn't exclude cell phone subscribers, either. As used in the TCPA "residential" is just the opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So the word "residential" refers to the purposes for which a phone is used, not its physical characteristics or location. *Wilson,* 2025 WL 1784815, at *5; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024). And "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206; *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024). Many cell phone subscribers, including Mr. Card, fit that description.

In its 2003 Do-Not-Call Order, the FCC concluded that wireless subscribers qualify for protection because they often use wireless phones in the same manner as residential wireline

telephones. 18 FCC Rcd. 14014 ¶¶33-36. The FCC has consistently adhered to that interpretation for more than twenty years. Even after *Loper Bright* and *McLaughlin*, courts have continued to recognize the FCC's reasoning as highly persuasive under *Skidmore*.

Indeed, every court to address this issue after the Supreme Court's ruling in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), has reached the exact same conclusion—that cellular telephone numbers are protected under the TCPA's National Do Not Call Registry provision. *See e.g. Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *7-9 (N.D. Ga. Aug. 7, 2025) (cleaned up).

Ultimately, as one Court put it addressing a similar motion: "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025). This Court can—and should—follow suit.

The cases Defendant cites do not support a different conclusion. Defendant principally relies on *Gaker*. But this Court has already distinguished *Gaker*, but it has been subsequently distinguished by other North Carolina federal courts, including in *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *3-4 (M.D.N.C. Aug. 12, 2024), report and recommendation adopted, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024) where the Court distinguished *Gaker* on at least three independent grounds.

Defendant's argument is particularly unpersuasive because another court within North Carolina has already rejected it after *Loper Bright*. In *Newman v. SGMS, Inc.,* 2025 U.S. Dist. LEXIS 169748 (W.D.N.C. Sept. 2, 2025), the defendants argued that § 227(c) does not protect cellular telephone numbers because they are not "residential telephone subscribers." Judge Bell denied the motion to dismiss, holding that recent district court authority within the Fourth Circuit

11

overwhelmingly recognizes that a cellular telephone used for "personal, residential, and household reasons" and registered on the National Do Not Call Registry plausibly qualifies as a residential telephone under the TCPA. *Id.* at *6-7 (W.D.N.C. Sept. 2, 2025).

*Newman* is especially persuasive because it arose in the Western District of North Carolina, addressed the precise argument Defendant advances here, and expressly declined to follow the minority approach represented by *Gaker*. *Id.* at *6-7. That reasoning applies with equal force: Plaintiff alleges that his cellular telephone is used for personal, residential, and household purposes and was listed on the National Do Not Call Registry, which is more than sufficient to state a claim under § 227(c).

Accordingly, the text, structure, and history of § 227(c) confirm that "residential telephone subscribers" plainly encompasses cell-phone subscribers like Plaintiff. Defendant's cramped reading cannot be reconciled with the statute's ordinary meaning, the FCC's consistent interpretation, or the weight of authority, and this Court should reject it.

## II.     Text Messages are "Telephone Calls" under 47 U.S.C. § 227(c)(5).

Defendant contends that a text message is not a "telephone call" under Section 227(c)(5). The Supreme Court, every circuit to consider the question, and the majority of district courts—even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)—disagree, which includes the only courts within the Fourth Circuit to consider this question. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"); *Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 WL 486556, at *5 (N.D.W. Va. Jan. 5, 2026) ("Since the statute's enactment, courts across the country have consistently held that a text message constitutes a 'call' within the meaning of § 227(c)(5). . . . Regardless of the level of deference afforded, the result is the same: a text message

12

is a 'call' under the TCPA."); Order, *McGonigle v. Teleflora, Inc.*, No. 1:25-cv-00807-MSN-WEF (E.D. Va. Mar. 13, 2026), ECF No. 66 (denying defendant's motion to dismiss arguing that texts are not "calls" under Section 227(c)(5)).

Although the Supreme Court in *Facebook, Inc. v. Duguid* separately noted that the parties before it did not dispute that a text message qualifies as a call and that the Court did not need to resolve the question, 592 U.S. at 400 n.2, that observation reflects the uniform, longstanding consensus among courts and litigants alike—not any doubt about the correctness of that consensus.

As the Fourth Circuit has explained in the closely related Do-Not-Call registry context, "[t]he Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019). Nothing in that model of clarity turns on whether a prohibited solicitation arrives as a voice call or a text message, and every court within the Fourth Circuit to address the question has agreed. The majority conclusion—that texts are calls under 47 U.S.C. § 227(c)(5)—is correct.

### A. The Plain Text Supports the Conclusion that a Text is a Call.

The contemporaneous meaning of "call" refer[s] to an attempt to communicate by telephone"—a definition that plainly includes text messages, which are "a form of communication used primarily between telephones." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009)). The Ninth Circuit reaffirmed that conclusion earlier this year under de novo review, without relying on *Chevron* deference. *Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273, at *3–4 (9th Cir. Jan. 13, 2026). *Howard* found that two key points from the analysis

13

of statutory construction in *Satterfield* "support the conclusion that a 'text message' constitutes a 'call' within the meaning of the TCPA": (1) that it accords with the plain meaning of "call"; and (2) that treating a text as a call was consistent with the TCPA's purpose of protecting privacy rights. *Id.* at 1123.

"Courts interpret statutory language in accord with the 'ordinary public meaning of its terms at the time of its enactment." *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637 (S.D.N.Y. Dec. 5, 2025) (quoting *Bostock v. Clayton Cnty.*, 509 U.S. 644, 654 (2020)). When the TCPA was enacted in 1991, the "ordinary public meaning of 'telephone call' . . . was a communication made by telephone." *Id.* (citing Webster's Ninth New Collegiate Dictionary 197 (1989) ("the act of calling on the telephone,' *i.e.*, "to get or try to get into communication by telephone," or "to deliver (a message) by telephone"); Webster's New International Dictionary 318 (1993) ("to communicate with or try to get into communication with a person by telephone"); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 (9th Cir. 2009) (same)).

Earlier this year, the Southern District of Texas addressed this same threshold question and answered yes, explaining that the "true problem" is not statutory ambiguity, but that "technology has done more to change [telephones] than [Congress] has done to change § 227(c)(5)." *Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 1415, at *8–9 (S.D. Tex. Jan. 26, 2026). Applying ordinary-meaning principles anchored to 1991 usage, *Alvarez* held that the "capacious" definition of "call" plainly reaches text messages, and rejected the notion that modern speakers' tendency to distinguish "calls" from "texts" narrows a statutory term fixed at enactment. *Id.* at *9–13 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)). Had Congress meant to restrict Section 227(c)(5) to audible communications, "it would have used the phrase 'voice call,' rather than

14

'telephone call.'" *Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, at *7–8 (C.D. Cal. Mar. 11, 2026) (cleaned up).

Defendant's own "common usage" argument does not survive scrutiny on its own terms. Defendant contends elsewhere that the TCPA's meaning was fixed at the time of enactment and must be read according to 1991 usage, yet its assertion that no ordinary speaker would call a text message a "call" rests on a consumer dictionary and case law published well over three decades later. Defendant cannot invoke a fixed-at-enactment methodology in one part of its brief and a present-day dictionary in the next. The commonly accepted meaning of the word, "call" around the time of the TCPA's enactment the included any attempt to communicate by telephone without regard to whether that communication was spoken or written. *See Lysaght v. State of N.J.*, 837 F. Supp. 646, 648 n.1 (D.N.J. 1993) ("A 'caller' is defined as 'a person who attempts to contact or contacts a subscriber in this State by telephone or using a telephone line').

### B. Section 227(c)'s Text and Fourth Circuit Precedent Both Confirm That Texts Are Calls.

The core of Section 227(c) prohibits "telephone solicitations" to numbers on the Registry, 47 U.S.C. § 227(c)(1), (3)(F), and defines a "telephone solicitation" to mean "the initiation of a telephone call or message . . . which is transmitted to any person," *id.* § 227(a)(4) (emphasis added)a definition that plainly encompasses text messages independent of the word "call" standing alone. Section 227(c)(5)'s private right of action for a "person who has received more than one telephone call . . . in violation of the regulations" is thus triggered by a telemarketing text sent in violation of those regulations, just as it would be by a voice call. *Krakauer*, 925 F.3d at 650.

Courts within the Fourth Circuit's footprint have repeatedly agreed. *See Williams v. Myler Disability, LLC*, No. 3:20-cv-00275, 2020 WL 6693134, at *1 n.2 (W.D.N.C. Nov. 12, 2020). Most directly, in *Mey v. Liberty Home Guard, LLC*, 2026 U.S. Dist. LEXIS 739, at *16-20 (N.D.W. Va.

15

Jan. 5, 2026), the court rejected the identical argument Defendant advances here, explaining that Section 227(c) regulates "telephone solicitations," which Congress defined to include "the initiation of a telephone call or message," and that neither *Loper Bright* nor *McLaughlin* altered that conclusion because the FCC's interpretation remains persuasive and an independent analysis of the statutory text reaches the same result. *Id.* at \*17-20. This Court should do likewise.

### C. Congress Ratified the FCC's Interpretation, and, In Any Event, the FCC's Interpretation Warrants Deference.

Congress's own 2019 amendments confirm the point. When Congress passed the TRACED Act, it directed the FCC to prescribe regulations concerning "a call made or a text message sent in violation of" Section 227(b). 47 U.S.C. § 227(i)(1)(A) (emphasis added); Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence (TRACED) Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019). By 2019, the FCC and every court to consider the issue had long interpreted "call" to include text messages; Congress is "presumed to be aware of" that interpretation and to have "adopt[ed] that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). Where Congress has ratified an agency construction "with positive legislation," courts "cannot but deem that construction virtually conclusive." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986).

Even setting ratification aside, the FCC has held since 2003 that text messages constitute calls within the meaning of the TCPA, *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003), and Section 227(c) expressly delegates to the FCC the authority to decide how best to accomplish the statute's privacy-protection purposes, 47 U.S.C. § 227(c)(1)(A), (E). Courts have continued to defer to that interpretation even after *Loper Bright* and *McLaughlin*. *See, e.g., Mey*, 2026 U.S. Dist. LEXIS 739, at \*18–19. At minimum, the FCC's longstanding

16

interpretation of "call" is an "informed judgment to which [a court can] properly resort for guidance." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)).

Section 227(c) is an express delegation of that sort. Congress didn't write the Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility" to best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's "delegated authority" to make Do Not Call List rules). It follows that, if the statute doesn't resolve this question, Congress expected that the FCC would.

### D. Defendant's interpretation would sever § 227(c)(5) from the regulations it was enacted to enforce.

Defendant's motion repeatedly focuses on the phrase "telephone call" in § 227(c)(5) while largely ignoring the remainder of the statutory scheme. But § 227(c)(5) does not create a freestanding prohibition. Rather, it creates a private right of action for a person who receives more than one telephone call "in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5).

The regulations prescribed under subsection (c) expressly apply to text messages. The FCC's rules provide that the do-not-call requirements are applicable to persons making "telemarketing calls or text messages." 47 C.F.R. § 64.1200(e). Thus, the very regulations that

17

Defendant allegedly violated expressly regulate telemarketing text messages.

Defendant's interpretation creates a statutory anomaly. Under Defendant's theory, telemarketing text messages may violate the FCC's regulations promulgated under § 227(c), but consumers would have no private remedy for those violations because the communications happened to be delivered by text rather than voice. Nothing in the statutory text suggests Congress intended such a peculiar result.

Indeed, Defendant's reading would render portions of the FCC's do-not-call regulations largely unenforceable by private litigants. Courts generally avoid interpretations that create internal inconsistencies within a statutory scheme. See *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000) (statutes should be interpreted as a symmetrical and coherent regulatory scheme). The more natural reading is the one adopted by the FCC and by the growing majority of courts to consider the issue: where the regulations promulgated under § 227(c) expressly regulate telemarketing text messages, the private right of action Congress created to enforce those regulations likewise reaches telemarketing text messages.

### E. Defendant's Cases and its Related Arguments do not Withstand Scrutiny.

Defendant's remaining textual and structural arguments do not support a different conclusion. They depend on isolating individual words from the broader statutory scheme, drawing negative inferences from later amendments that expressly preserve existing FCC rules, and relying on a minority line of district court decisions that either disregard Section 227(c)(5)'s incorporation of the implementing regulations or accept internally inconsistent premises. Considered closely, each argument reinforces rather than undermines the conclusion that Section 227(c) reaches telemarketing text messages.

18

Defendant's remaining textual arguments fail because they ignore the statute as a whole. Defendant quotes *Stockdale v. Skymount Property Group, LLC*, No. 1:25 CV 1282, 2026 WL 691842 (N.D. Ohio Mar. 3, 2026), in arguing that "'telephone call' would not have included text messages when Congress passed the TCPA" because text messaging was unavailable in 1991. *Stockdale* acknowledges that "Congress can, and often does, enact statutes broad enough to cover future factual situations unimaginable at the time of enactment." 2026 WL 591842, at *3 n.6 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("As we have said before, the fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'"). However, Defendant's analysis ignores the statutory language demonstrating this breadth.

Interpreting Section 227(c)(5) as only conferring a private right of action for unwanted voice calls, as Defendant does, would render the language "in violation of the regulations prescribed under [this subsection]" null, as the FCC's regulatory power and its regulations would have a broader scope than the private right of action. *See generally Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) (neglecting to analyze this language).

Defendant also relies on the flawed reasoning in *Davis v CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025)*, which reasoned that Congress could have concluded unwanted telephone calls are more bothersome than unwanted text messages and so limited the private right accordingly. *Id.* at 1274. However, Defendant, and the cases on which it relies, wield the fact that the first ever text message was sent a full year after the enactment of the TCPA. *See also Davis*, 797 F. Supp. 3d at 1273; *Jones*, 792 F. Supp. 3d at 899. But if text messaging was not an available technology, Congress could ***not*** "reasonably conclude that unwanted telephone calls are more

19

bothersome and intrusive than unwanted text messages, and [] [] provide broader protections against the former than the latter." *Davis*, 797 F. Supp. 3d at 1274. This argument is self-defeating.

Defendant's reliance on *Salcedo v. Hanna*, 936 F.3d 1162, 1168-69 (11th Cir. 2019), fares no better. *Salcedo* addressed only whether receipt of a single unwanted text message pleads a concrete injury for Article III standing purposes, not whether a text message is a "telephone call" within the meaning of Section 227(c)(5).

Defendant's interpretation would also render the regulations promulgated under Section 227(c)(1) and (2) restricting unwanted telephone solicitations, as opposed to voice calls, ineffectual. *See Wilson v. MEDVIDI*, No. 5:25-cv-03996-BLF, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025) (collecting cases).

Finally, Defendant says that an entirely separate provision distinguishes between calls and text messages. It asserts that in 2018, Congress amended Section 227(e) and allegedly distinguished text messages from calls. As an initial matter, that reading discounts the fact that Congress explicitly directed that nothing in section 227(e) "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Consolidated Appropriations Act of 2018, 132 Stat. at 1094. That includes the judicial decisions and FCC rules and orders that made clear that "call" in section 227 includes "text messages." *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); *see, e.g.*, *Satterfield*, 569 F.3d at 954. On close examination, however, it cuts decisively the other way.

*Indeed*, the 2018 amendments were enacted in a *Chevron* world. When Congress drafted § 227(e), the FCC's interpretation that the word "call" included text messages was not merely persuasive guidance, it was *binding* on the courts under *Chevron* and the provisions of the Hobbs Act. Under a pre-*Loper Bright* regime, the FCC had already conclusively interpreted "call" in the

20

TCPA to include text messages, and had done so as early as 2003. *See* 18 FCC Rcd. 14014, 14115-16 (2003).

Against that backdrop, Congress's drafting choices in 2018 send the *opposite* signal from the inference the Defendant draws. Congress did not need to add "text message" to § 227(c) to bring texts within § 227(c)(5) because the FCC *already had done so*, and under *Chevron*, courts were bound to follow that interpretation. If Congress had *disagreed* with the FCC's reading that the term "call" encompassed text message calls, the natural and obvious move would have been to amend the statute to *reject* that binding interpretation. Congress did the opposite. It amended an adjacent subsection while expressly preserving FCC rules and orders. That is acceptance of the FCC's rulemaking.

The Supreme Court itself forecloses any contrary reading. *Loper Bright* itself expressly declined to "call into question prior cases that relied on the *Chevron* framework," explaining that the "holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite [our] change in interpretive methodology." 603 U.S. at 376. "Mere reliance on *Chevron* cannot constitute a special justification for overruling such a holding." *Id.* (cleaned up).

Properly applied here, that doctrine is dispositive. The FCC's 2018-era interpretation was a specific agency action upheld under *Chevron* and was the law of the land; statutory *stare decisis* preserves it. *Loper Bright*, 603 U.S. at 376. Defendant's inference that Congress's silence in § 227(c) rejected that interpretation runs precisely opposite to historical reality: in the *Chevron* era, congressional silence in the face of a settled, binding agency interpretation was acceptance, not disapproval.

21

**F. The Seventh Circuit's Decision in *Steidinger* Does Not Warrant a Different Result.**

Defendant's Notice of Supplemental Authority cites *Steidinger v. Blackstone Med. Servs.*, No. 25-2398, --- F.4th ---, 2026 WL 2028517 (7th Cir. July 14, 2026), holding that 47 U.S.C. § 227(c)(5) does not reach text messages. *Steidinger* is not binding here, stands alone among the courts of appeals, and conflicts with the Ninth Circuit's holding in *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026). Each ground on which the panel rejected the plaintiffs' arguments fails here.

**1. The panel misread the 1991 definition on which it relied.** To "call" meant "to get or try to get into communication by telephone," a functional definition asking whether one attempted to communicate by telephone, not whether the communication was audible. The panel imported an audio requirement from the definition of the instrument ("telephone") rather than the act ("call"). A text message is a "call" because it is a form of communication between telephones.

**2. "Call" and "message" overlap.** The panel inferred from § 227(a)(4)'s "call or message" phrasing that a message cannot also be a call, but ignored that § 227(b)(1)(B) itself regulates a "telephone call" made "to deliver a message." Section 227(c)(5)(C)'s affirmative defense also turns on procedures to prevent "telephone solicitations," confirming the paragraph enforces subsection (c)'s solicitation rules generally.

**3. The fax provisions prove nothing about SMS.** The panel drew from Sections 227(a)(3) and (d)(1) the inference that Congress regarded text-based communications as "messages, not calls." But "telephone facsimile machine" means equipment that "transcribe[s] text or images (or both) from an electronic signal received over a regular telephone line onto paper," 47 U.S.C. § 227(a)(3), confirming that telephone lines receive telephone calls.

22

**4. The panel gives "call" two meanings in one statute.** *Steidinger* acknowledges texts are "calls" under § 227(b), yet holds the same word excludes texts in § 227(c)(5).

**5. Section 227(c)(5) expressly incorporates regulations that govern texts.** The private right of action requires receipt of more than one call "in violation of the regulations prescribed under this subsection," and those regulations expressly reach "telemarketing calls or text messages." 47 C.F.R. § 64.1200(e). This is not deference, and *McLaughlin* is beside the point, because Congress made subsection (c)'s regulations an element of the claim.

For these reasons, *Steidinger* should not alter the Court's analysis, and the motion to dismiss should be denied.

### III. Defendant's Contrary Authorities from Out of this Circuit Do Not Create a Persuasive Competing Interpretation of Section 227(c).

Defendant alternatively asks this Court to certify its decision for interlocutory appeal under 28 U.S.C. § 1292(b). That request should likewise be denied. Interlocutory review under Section 1292(b) is "a narrow exception" to the final judgment rule and is appropriate only where an order "involve[s] 'a controlling question of law as to which there is substantial ground for difference of opinion,'" and where an immediate appeal "promise[s] to 'materially advance the ultimate termination of the litigation.'" *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting 28 U.S.C. § 1292(b)). The Fourth Circuit has repeatedly cautioned "that § 1292(b) should be used sparingly and thus that its requirements must be strictly construed." *Id.* (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)); *Zinski v. Liberty Univ., Inc.*, 2025 U.S. Dist. LEXIS 64425, at *5 (W.D. Va. Apr. 3, 2025).

Defendant cannot satisfy that demanding standard. The mere existence of contrary district court opinions—or the fact that the issue has not yet been addressed by the Fourth Circuit—does not establish a "substantial ground for difference of opinion." Rather, a substantial ground

23

ordinarily exists only where there is a "novel and difficult issue of first impression" or a genuine circuit split on a controlling legal issue that the governing court of appeals has not resolved. *Hatch v. Demayo*, No. 1:16-cv-925, 2018 U.S. Dist. LEXIS 169737, at *5, 2018 WL 4688390, at *2 (M.D.N.C. Sept. 29, 2018) (quoting *Cooke-Bates v. Bayer Corp.*, No. 2:10-cv-261, 2010 U.S. Dist. LEXIS 121255, at *7, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010)).

Those circumstances are absent here. Although the Seventh Circuit recently created a circuit split in Steidinger, addressed above, that single out-of-circuit decision does not itself establish the kind of substantial ground for disagreement Section 1292(b) requires, particularly where the only other court of appeals to address the issue after *Loper Bright* reaffirmed that text messages are calls under the TCPA, even applying independent judicial review. *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123-24 (9th Cir. 2026). Nor is there any conflict within this Circuit. Courts within the Fourth Circuit to consider these issues have consistently concluded that Section 227(c) protects residential cellular subscribers and encompasses telemarketing text messages. Defendant relies instead on a minority of out-of-circuit district court decisions that this Court can fully consider in resolving the pending motion. Such disagreement among district courts does not constitute the type of exceptional circumstance warranting immediate appellate review.

What is particularly telling is the complete absence of any meaningful intra-circuit disagreement. With respect to whether text messages constitute "telephone calls" under Section 227(c)(5), every court within the Fourth Circuit to consider the issue has ruled in Plaintiff's favor. See *Mey v. Liberty Home Guard, LLC*, No. 5:23-cv-281, 2026 WL 486556, at *5 (N.D.W. Va. Jan. 5, 2026). *Hudson v. Palm Beach Tan, Inc.*, No. 1:23-cv-486, 2024 WL 4190513, at *5 (M.D.N.C. Aug. 12, 2024), adopted, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024). Defendant cannot identify a single Fourth Circuit decision holding that telemarketing text messages fall outside Section

24

227(c)(5). That uniformity within this Circuit stands in sharp contrast to Defendant's reliance on a handful of out-of-circuit district court decisions.

The same is true of Defendant's argument that cellular telephone subscribers are categorically excluded from the National Do Not Call Registry's protections. Defendant principally relies on *Gaker v. Q3M Insurance Solutions*, No. 3:22-cv-296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919 (W.D.N.C. Feb. 7, 2023), a magistrate judge recommendation issued before the substantial body of post-*Loper Bright* and post-*McLaughlin* authority developed. But *Gaker* has become the minority view even within the Fourth Circuit. Since *Gaker*, at least four courts within the Fourth Circuit have either distinguished or rejected its reasoning and held that a cellular telephone used for personal, residential, and household purposes may qualify as a residential telephone under Section 227(c): *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *3-5 (M.D.N.C. Aug. 12, 2024), adopted, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024); *Mey v. Liberty Home Guard, LLC*, 2026 WL 486556, at *3-5 (N.D.W. Va. Jan. 5, 2026); Indeed, *Hudson*—from this very District—expressly declined to follow *Gaker*, explaining that the overwhelming weight of authority, the FCC's interpretation, and the reasoning of *Krakauer* all support extending Section 227(c)'s protections to residential cellular subscribers. Defendant's reliance on *Gaker* therefore highlights not a genuine split within this Circuit, but an increasingly isolated decision that subsequent courts have repeatedly declined to follow.

Accordingly, the trend within the Fourth Circuit is unmistakable. Defendant's position does not represent a legitimate competing interpretation of the statute, but a minority view that has steadily lost traction both within the Fourth Circuit and nationwide.

25

## IV. In the Alternative, Any Dismissal Should Be Without Prejudice and With Leave to Amend.

Defendant asks the Court, in the alternative, to dismiss the Complaint with prejudice on the theory that amendment would be futile. That request should be denied. Federal Rule of Civil Procedure 15(a)(2) directs that courts "should freely give leave [to amend] when justice so requires," and dismissal with prejudice is reserved for cases where no amendment could cure the pleading's deficiencies. Defendant's futility argument rests entirely on its proposed statutory interpretation—an interpretation that, as shown above, is contrary to the statute's text, structure, and the weight of authority both within and outside this Circuit. Because Plaintiff has adequately alleged that his cellular telephone number is a residential telephone number and that Defendant's telemarketing text messages are "telephone calls" under Section 227(c)(5), there is no basis to conclude that the Complaint is deficient, much less that any deficiency could not be cured through amendment. Should the Court conclude that any aspect of the Complaint requires amplification, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

## CONCLUSION

Plaintiff alleges that Defendant repeatedly sent unsolicited promotional text messages to a cellular telephone number that Plaintiff personally uses for residential and household purposes and had registered on the National Do Not Call Registry. Those allegations fall squarely within Section 227(c)'s consumer-privacy protections. The statutory text protects "residential telephone subscribers," not merely subscribers to landline equipment, and defines regulated telephone solicitations to include commercial calls or messages transmitted to any person. The statutory structure, Congress's subsequent enactments, the FCC's longstanding regulations, and the substantial weight of judicial authority all confirm that personal cellular numbers are eligible for National Do Not Call protection and that telemarketing texts are calls within the meaning of

26

Section 227(c)(5). Neither *Loper Bright* nor *McLaughlin* held otherwise. They permit independent judicial interpretation, and an independent interpretation confirms that the FCC's longstanding conclusions are correct. For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

The Court should also deny Defendant's alternative request for certification under 28 U.S.C. § 1292(b), because Defendant has not established that immediate appellate review would materially advance the ultimate termination of this litigation. Finally, should the Court find any portion of the Complaint deficient, dismissal should be without prejudice and with leave to amend rather than with prejudice.

Dated: August 14, 2026

/s/ Anthony I. Paronich
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
**Attorney for Plaintiff**

/s/ Karl S. Gwaltney
Karl S. Gwaltney
MAGINNIS HOWARD
7706 Six Forks Road, Suite 101
Raleigh, NC 27615
Tel: (919) 526-0450
Fax: (919) 882-8763
kgwaltney@carolinalaw.com
**Local Civil Rule 83.1(d) Attorney for Plaintiff**

## <u>**CERTIFICATION OF WORD COUNT**</u>

Pursuant to Local Rule 7.3(d), the undersigned hereby certifies that this brief, excluding the case caption, signature blocks, and this certification, consists of less than 6,250 words. The undersigned relies on the word count function of Microsoft Word in making this certification.

<u>*/s/ Anthony I. Paronich*</u>
Anthony I. Paronich
**Attorney for Plaintiff**

28